U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 28, 2009**

_____
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GARY R. COOPER and | § | Case No. 99-32282-SGJ-7 |
| JUNANNE M. COOPER, | § | |
| | § | |
| Debtors. | § | |
| DIANE G. REED, CHAPTER 7 | § | |
| TRUSTEE, and | § | |
| THE CADLE COMPANY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. 06-3127 |
| | § | |
| GARY R. COOPER, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER DENYING MOTION OF INDIVIDUAL CREDITOR TO PROSECUTE CHAPTER 7 ESTATE'S CAUSES OF ACTION [DE #46]

### I.
### INTRODUCTION:  SUMMARY OF ISSUE PRESENTED AND HOLDING

Before this court is the "Motion for Order Authorizing The

Cadle Company to Prosecute Trustee's Causes of Action" [doc. no.

-1-

46] (the "Standing Motion"), which is opposed by the Debtors and conditionally opposed by the Chapter 7 Trustee.  The central issue presented by this contested matter is whether, and under what conditions, an ***individual creditor in a Chapter 7 case*** has, or may be granted by the bankruptcy court, standing to pursue estate causes of action.  In this case, the estate causes of action at issue are a Section 542 "turnover" action and certain state law (*i.e.,* statutory and common law) fraud causes of action.  In this court's view, this exact "standing" question is not resolved by either:  (a) *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942 (2000), which addresses the plain meaning of the phrase "the trustee may," in Section 506(c)—a statute that is similarly worded to various of the other chapter 5 avoidance action statutes[1]—and holds that a trustee has exclusive authority to bring actions involving such statute and a creditor has no ***independent*** right to bring such an action;[2] or (b) *Louisiana World Exposition, Inc. v.*

---

[1] *See* 11 U.S.C. §§ 542, 543, 544, 545, 547, 548, 549, 550 (the so-called "chapter 5 avoidance action" statutes). Admittedly, Section 542(a)—which is the relevant statute in the case at bar—is worded a little differently than most of these other statutes, in that it articulates an obligation of the debtor to "deliver to the trustee" estate property, rather than articulating the type of avoidance and recovery steps that a "trustee may" take.

[2] The Supreme Court, in a famous footnote in *Hartford*, left open the question of whether a bankruptcy court can allow a creditor or creditors committee the ***derivative*** right to bring

*Federal Ins. Co. (In re Louisiana World Exposition, Inc.)*, 858 F.2d 233 (5th Cir. 1988), and the legion of other cases—most notably *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548 (3d Cir. 2003) (*en banc*)—addressing a creditor's or creditors committee's **derivative standing** to pursue chapter 5 avoidance actions and other estate causes of action in a **Chapter 11 context**.   This court holds as follows:

> 1.   In a Chapter 7 case—in contrast to a Chapter 11 case—there is no textual basis in the Bankruptcy Code to support the notion that a non-trustee, such as a creditor:  (a) has independent standing to pursue chapter 5 avoidance actions or other estate causes of action; or (b) may be granted derivative standing. Moreover, there is generally not any extra-textual, equitable rationale for granting a non-trustee derivative standing.

> 2.   In Chapter 11, there is both a textual basis (*e.g.,* Section 1103(c)(5), Section 1109(b) and Section 1123(b)(3)(B)) and, frequently, a non-textual, equitable rationale for granting a creditor or creditors committee derivative standing to pursue estate actions (*i.e.,* the equitable rationale coming into play when the debtor-in-possession has a conflict of interest in pursuing an action, such as in the situation of an insider-defendant).   In Chapter 11, the practice of creditors committees being granted derivative standing to pursue estate actions is certainly widespread and well recognized.

> 3.   But in Chapter 7, a trustee has a unique role as an independent fiduciary, with a completely different

---

avoidance actions, such as an action pursuant to 11 U.S.C. § 506(c), when the trustee refuses to do so, even though the applicable Code provisions mention only the trustee.   *Hartford,* 530 U.S. at 13 n.5.

perspective and interest in a bankruptcy estate than an individual creditor. The trustee also does not have the potential for conflicts of interest that a debtor-in-possession sometimes has, since the trustee has no prepetition relationship with the debtor's management, shareholders or creditors. For these reasons, there would seem to be no equitable rationale to deviate from the Bankruptcy Code's apparent remedial scheme *vis-a-vis* avoidance actions and other estate causes of action.

4. But even if there does exist, in Chapter 7, the power to grant derivative standing to a creditor to pursue estate causes of action, such power should not be exercised in a relaxed manner by bankruptcy courts. Otherwise, a creditor could "hijack" a Chapter 7 bankruptcy case in a manner Congress did not envision. If a creditor does not agree with a Chapter 7 trustee's exercise of its fiduciary duties, it can file a motion to compel the trustee to act or file a motion to have the trustee removed. 11 U.S.C. § 324. But, it would seem to be, generally, an unwise idea to allow a creditor to usurp the trustee's role as a representative of the estate (11 U.S.C. § 323(a))—including being a gatekeeper for what actions make sense and the evaluator of the potential benefits of litigation.[3] A creditor is not a fiduciary.[4]

5. Notably, this holding is consistent with horn book trust law that instructs that trust beneficiaries lack standing to sue third parties on behalf of the trust. *R. Volmer, Standing to Sue in Trust Litigation,* 19 Est. Plan. 384 (1992).

---

[3] *See Cybergenics,* 330 F.3d at 561; *Hartford*, 530 U.S. at 8.

[4] *But see In re Mirant Corp.,* 334 B.R. 787, 793 (Bankr. N.D. Tex. 2005) ("It is a well established principle of bankruptcy law that when a party purports to act for the benefit of a class, the party assumes a fiduciary role as to the class.") (citing *Young v. Higbee Co.,* 324 U.S. 204, 65 S.Ct. 594 (1945), and *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549, 69 S. Ct. 1221, 1227 (1949) ("a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated.")).

6.   In any event, for the reasons that will be more
fully explained below, the creditor who is requesting
derivative status in the case at bar has not presented
a compelling argument that warrants conferring upon it
derivative standing in this Chapter 7 case.

## II.
## UNDISPUTED FACTS

The case at bar has a lengthy procedural history, dating back to 1999.  Luckily, the only relevant facts for purposes of this contested matter are few and undisputed.

The debtors, Gary R. and Junanne M. Cooper, filed a Chapter 7 bankruptcy case on March 25, 1999.  They received a discharge on August 6, 1999.  Quite some time later (in 2006), the Chapter 7 Trustee and a large unsecured creditor, The Cadle Company ("Cadle"),[5] as joint plaintiffs, filed an adversary proceeding against Mr. Cooper only ("Mr. Cooper" or the "Debtor"), seeking to:  (a) revoke his discharge, pursuant to Section 727(d), because of his alleged (i) postpetition receipt of and failure to account for and surrender to the Trustee the proceeds of certain non-exempt property sold postpetition (hereinafter, "the

---

[5]The court takes judicial notice that Cadle filed a Notice of Transfer of Proof of Claim in this case [doc. no. 66] on May 9, 2005, indicating that it purchased the $1,312,853.42 unsecured judgment claim of Republic Credit One L.P. (Proof of Claim No. 23, filed October 18, 1999) pursuant to an Assignment of Judgment dated September 23, 2004, but effective as of September 17, 2001 (interestingly, this was years **after** the Debtor's discharge).

Nonexempt Sale Proceeds")[6] and, relatedly, (ii) Debtor's alleged failure to abide by an order of the court; (b) compel turnover of the Nonexempt Sale Proceeds, pursuant to section 542; and (c) obtain a judgment against the Debtor for common law fraud or statutory fraud, pursuant to Tex. Bus & Com. Code § 27.01, for the Debtor's alleged false representations and promises concerning the Nonexempt Sale Proceeds.   The amount of the Nonexempt Sale Proceeds in controversy is $168,423.47.

Several months after the filing of the adversary proceeding, the Trustee (without the consent of the Co-Plaintiff Cadle) sought bankruptcy court approval of a compromise and settlement of the adversary proceeding.   Pursuant to the proposed settlement, the entire action would be dismissed, the Debtor's discharge would remain intact, and the Debtor would pay a portion of the amount in controversy (*i.e.,* a portion of the Nonexempt Sale Proceeds) to the Trustee.   Cadle objected to the settlement asserting, among other things, that the Trustee should not be permitted to fully settle the adversary proceeding over Cadle's objection, because Cadle could have brought its Section 727(d) objection to the Debtor's discharge independent of the Trustee.

---

[6]The Nonexempt Sale Proceeds were derived from:  (a) the sale of the Debtors' homestead, which the Trustee and Debtors had agreed would be treated as partially non-exempt, because of the large amount of acreage involved, and (b) the sale of certain real property that was part of the Debtor's parents' probate estate, of which the Debtor's sibling was executor, and in which the Debtor had a one-third interest.

This court approved the settlement over Cadle's objection. Cadle appealed, and the district court affirmed in part and reversed and remanded in part. Specifically, the district court affirmed the portion of the bankruptcy court's ruling approving the settlement between the Trustee and the Debtor, as fair and equitable and in the best interest of estate. However, the district court reversed the portion of the ruling that essentially forced Cadle to dismiss its Section 727(d) counts as part of the settlement (focusing on the fact that Section 727(d) permits a trustee *or* a creditor to request revocation of a discharge; it is not just an "estate" cause of action).[7] The district court remanded to the bankruptcy court with the instruction that Cadle be allowed to go forward with its Section 727(d) counts. At this point, the settlement unraveled, because, obviously, the Debtor was not willing to settle with the Trustee if he was not also settling with Cadle. Thus, the adversary proceeding remained intact (with not just the Section 727(d) counts, but also with the turnover action and the fraud counts).

It was against this backdrop that Cadle filed its Standing Motion, asking that it be granted authority to prosecute *all* of the causes of action in the Trustee's stead. The Trustee, at this point, does not have the financial resources to vigorously

---

[7] The U.S. Trustee may, of course, also move for relief pursuant to Section 727(d).

pursue these claims. After the district court's decision, the Trustee expressed the desire to simply abandon the causes of action. The Trustee asked Cadle to agree to a Joint Stipulation of Dismissal of the Trustee as Co-Plaintiff in the adversary proceeding. But Cadle would not agree. Rather, Cadle filed the Standing Motion, requesting that it be substituted for the Trustee in the adversary proceeding—apparently because it wanted to pursue, not just its Section 727(d) claims, but the estate-owned causes of action itself (*i.e.,* the turnover and fraud causes of action). Cadle knew, without the Standing Motion, it might otherwise have a "standing" problem.

The Debtor opposed Cadle's Standing Motion. Initially, the Trustee did not. However, at the hearing on the Standing Motion, it became apparent that the Trustee was under the misunderstanding that she would be consulted and involved in Cadle's litigation strategies *vis-a-vis* the estate causes of action. Cadle announced that it would keep the Trustee informed, like it would any other party-in-interest in the case, but that it did not intend to necessarily defer in any special way to the Trustee. Rather, Cadle is seeking full derivative standing to act for the estate—although Cadle acknowledges that any recovery realized will go to the estate and be distributed in accordance

-8-

with Bankruptcy Code priorities.[8]

The Trustee, upon hearing this clarification, opposed the court granting derivative standing to Cadle to pursue the estate actions unless the Trustee is consulted and given deference in the decision making process. Counsel for the Trustee asserted at the hearing on the Standing Motion that the Trustee did not understand that she would be abdicating her responsibilities and authority to settle her claims with the Debtor. Troubled by the prospect of giving up all of her authority as Trustee with regard to this adversary proceeding, the Trustee asserted that, unless the court's order approving the Standing Motion provided that the Trustee would have continuing authority to settle the estate claims, the Trustee opposed the somewhat forced abdication of her responsibilities and authority as Trustee.

---

[8]Cadle made clear during argument that, while Cadle **might** consult with the Trustee regarding strategy or other matters concerning the litigation, it is proposing that sole settlement and litigation authority would lie with Cadle. Cadle's position is that, should the court approve the Standing Motion, Cadle would be **the** estate representative. Cadle would control **all** decisions and would, **perhaps**, consult with the Trustee, as it would with any other party-in-interest. But if the Trustee disagreed with Cadle regarding, for instance, the bona fides of a settlement, the Trustee could object like any other party and the standard would be whether Cadle is breaching its assumed fiduciary duty. The bottom line for Cadle is that, at the end of the day, it does not want to have to obtain the Trustee's permission to act or not to act.

**III.**
**CONCLUSIONS OF LAW**

**A.   The Distinction Between Chapter 7 and 11, as it Relates to Non-Trustee Derivative Standing to Pursue Estate Causes of Action.**

The court starts with the proposition that, with regard to Chapter 7 cases—in contrast to Chapter 11 cases—there appears to be no textual basis in the Bankruptcy Code to support the notion that a non-trustee, such as a creditor:  (a) has independent standing to pursue chapter 5 avoidance actions or other estate causes of action; or (b) may be granted derivative standing. Moreover, there is generally not any extra-textual, equitable rationale for granting a non-trustee derivative standing.

**1.   Lack of Independent Standing of a Non-Trustee to Bring Causes of Action.**

First, on the topic of independent standing, it is rather widely accepted that only the *trustee* (or debtor-in-possession in Chapter 11) has *independent* standing to pursue chapter 5 avoidance actions and other estate causes of action.  *See, e.g.,* 11 U.S.C. § 323 ("The trustee in a case under this title is the representative of the estate."); 11 U.S.C. § 704(a) ("The trustee shall . . . investigate the financial affairs of the debtor" and "collect and reduce to money the property of the estate" for the

benefit of all creditors.)[9]; 11 U.S.C. § 541(1) (The commencement
of a case creates an estate comprised of "all legal or equitable
interests of the debtor in property as of the commencement of the
case."). "We interpret 'all legal or equitable interests' [in
Section 541(a)] broadly: The estate includes causes of action
belonging to the debtor." *The Torch Liquidating Trust v. Lyle
Stockstill, et al.*, 561 F.3d 377 slip. *20-21 (5th Cir. 2009)).
*See also American Nat'l Bank v. MortgageAmerica Corp. (In re
MortgageAmerica Corp.),* 714 F.2d 1266, 1276 (5th Cir. 1983)
(noting that the legislative history of Section 541 makes clear
that the concept of estate property described therein should be
construed to include "rights of action"); *Schertz-Cibolo-
Universal City Ind. School Dist. v. Wright (In re Educators Group
Health Trust),* 25 F.3d 1281 (5th Cir. 1994) (cause of action
belongs to estate if harm to creditor is indirect and if debtor
could have raised action prepetition). *See also* 11 U.S.C.
§ 506(c) ("The **trustee**[10] may recover from property securing an
allowed secured claim the reasonable, necessary costs and
expenses of preserving . . . such property."); 11 U.S.C. § 542(a)
(An entity in possession, custody, or control of property of the
estate "shall deliver to the **trustee**, and account for such

---

[9] *See also* 11 U.S.C. § 1107(a) (giving a Chapter 11 debtor-
in-possession the rights, powers, duties and functions of a
trustee).

[10] All emphases in the quoted statutes are this court's.

property."); 11 U.S.C. § 544 ("The **trustee** shall have . . . the rights and power of, or may avoid any transfer of property of the debtor . . . that is voidable by a creditor."); 11 U.S.C. § 545 ("The **trustee** may avoid the fixing of a statutory lien on property of the debtor."); 11 U.S.C. § 547(b) (With regard to potential preferences, "the **trustee** may avoid any transfer of an interest of the debtor in property."); 11 U.S.C. § 548 (With regard to potential fraudulent transfers, "[t]he **trustee** may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor."); 11 U.S.C. § 549 (With regard to postpetition transactions, "the **trustee** may avoid a transfer of property of the estate . . . that occurs after the commencement of the case."); 11 U.S.C. § 550 (With respect to avoided transfers, "the **trustee** may recover, for the benefit of the estate, the property transferred . . ."); 11 U.S.C. § 553(b) (With respect to certain setoffs, "the **trustee** may recover from such creditor the amount so offset . . .").

If these statutes were not clear enough, in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942 (2000), the United States Supreme Court ruled that, by use of the phrase "the trustee may," in Section 506(c), Congress granted **exclusive** authority to the trustee to bring an action under Section 506(c). *Id.* at 530 U.S. at 8-9. The Court rejected the idea that use of the term "the trustee may" did not

-12-

necessarily mean that "others may not." *Id.* at 6. Rather the Court believed this was precisely what was meant by the statute (*i.e.,* exclusivity was intended).

> First, a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity. . . . Second, the fact that the sole party named—the trustee—has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not others.

*Id.* at 6-7. Thus, an administrative expense claimant lacked standing to seek a surcharge on a secured creditor's collateral for unpaid postpetition workers compensation premiums owed by the debtor. Using the *Hartford* method of interpretation leads to the inescapable conclusion that a creditor or other non-trustee lacks independent standing to pursue chapter 5 avoidance actions generally (because of the same use of the term "the trustee may" in 11 U.S.C. §§ 545, 547, 548, 549, 550 & 553). *See Surf N Sun Apts., Inc. v. Dempsey,* 253 B.R. 490 (M.D. Fla. 1999) (district court held that Bankruptcy Code does not vest bankruptcy courts with authority to grant standing to individual creditors to prosecute fraudulent transfer avoidance claims on behalf of estate, not even upon showing of extraordinary circumstances; trustee alone has standing to bring such claims, to exclusion of all other affected parties, including creditors, either individually or as group). The court elaborated:

-13-

> Where Congress deemed it beneficial to give particular rights and powers to creditors and debtors, it did so expressly. *See, e.g.*, 11 U.S.C. § 522(h) (expressly granting debtor standing to invoke the trustee's section 548 avoidance power in certain circumstances); 11 U.S.C. § 1107 (granting specific trustee powers to Chapter 11 debtor in possession); 11 U.S.C. § 1303 (granting specific trustee powers to Chapter 13 debtor); 11 U.S.C. § 553 (granting creditors power to exercise setoff rights in certain circumstances). Unlike the aforementioned Code sections, Congress made no express provision for creditors in section 548.

*Surf N Sun*, 253 B.R. at 492. *Accord Syndicate Exchange Corp. v. Duffy (In re Pro Greens, Inc.),* 297 B.R. 850 (Bankr. M.D. Fla. 2003). Likewise, it would seem that a creditor or non-trustee lacks independent standing to pursue ***other*** causes of action owned by the estate (*i.e.,* non-chapter 5 causes of action), because of the trustee's ***exclusive*** authority to collect property of the estate granted in Section 704, and further because of his exclusive role as "representative of the estate," pursuant to Section 323(a).

### 2. Derivative Standing of a Non-Trustee to Bring Causes of Action.

But what about derivative standing? This is the question that the Supreme Court left unanswered in *Hartford*. *Hartford,* 530 U.S. at 8 n.5 ("We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c).").

-14-

### a.   Chapter 11

This court is of the view that, in Chapter 11, there is both a textual basis and, frequently, a non-textual, equitable rationale for granting a creditors committee (and perhaps an individual creditor) derivative standing to pursue avoidance actions or other causes of action belonging to the estate.

The textual basis in Chapter 11 would seem to be at least the following:  (a) Section 1103(c)(5) (pursuant to which an official committee appointed in a Chapter 11 case under Section 1102, is granted general authority, after a list of specific powers, to "perform such other services as are in the interest of those represented"); (b) Section 1109(b) (pursuant to which various parties in interest, including creditors and creditors committees) are granted the right to raise and appear and be heard on any issue in a Chapter 11 case);[11] and, most significantly, Section 1123(b)(3)(B) (pursuant to which a Chapter 11 plan may provide for "the retention and enforcement by . . . a representative of the estate appointed for such purpose, of any claim or interest").  *See e.g.*, *McFarland v. Leyh (In re Texas General Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995)

---

[11]*But see Hartford,* 530 U.S. at 8 (Court rejected administrative claimant's argument that Section 1109(b)'s general provision granting creditors in Chapter 11 the right to be heard evinces the right of a nontrustee to recover under Section 506(c); this reasoning is *dicta,* since the Court first found Section 1109(b) technically inapplicable because the case had been converted to Chapter 7).

-15-

(Section 1123(b)(3)(B) provides a statutory basis in Chapter 11 cases "to transfer avoidance powers to a party other than the debtor or the trustee" pursuant to the terms of a confirmed plan).[12]

The additional non-textual rationale for granting a creditors committee or creditor derivative standing to pursue avoidance or other causes of action comes into play when a debtor-in-possession has a conflict of interest in pursuing an action.  Conflicts of interest are, of course, frequently encountered in Chapter 11, where the metaphor of the "fox guarding the hen house" is often appropro.  *Louisiana World* is the leading case from the Fifth Circuit describing this situation and articulating when a creditors committee may be permitted standing to pursue estate causes of action.  *Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.)*, 858 F.2d 233 (5th Cir. 1988).

---

[12] *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548, 553 (3d Cir. 2003) (*en banc*) (Third Circuit, sitting *en banc*, ruled to the contrary of an earlier Panel decision of the Third Circuit, and held that Sections 1109(b), 1103(c)(5), and 503(b)(3)(B) "evince Congress's approval of derivative avoidance actions by creditors' committees, and that bankruptcy courts' equitable powers enable them to authorize such suits as a remedy in cases where a debtor-in-possession unreasonably refuses to pursue an avoidance claim."). Note that four of the eleven judges of the Third Circuit (including current Supreme Court Justice Sam Alito) joined in a strong dissenting opinion, arguing that the majority opinion was inconsistent with *Hartford* and improperly relied on equity as a means to overcome the plain language "the trustee may."

*Louisiana World* involved a chapter 11 case of a nonprofit corporation which had organized the New Orleans World's Fair of 1984. The estate had potential causes of action against the debtor's officers and directors for gross negligence, mismanagement, and breach of fiduciary duty. The creditors committee had demanded that the debtor bring an action (very specifically listing in a letter the acts committed by the officers and directors that it believed were injurious to the debtor), but the debtor's board of directors refused to vote on the demand, recognizing that it had an inherent conflict of interest. The committee, construing this to be a refusal to pursue the claims, filed an application with the bankruptcy court seeking permission to file an action on the debtor's behalf (which the bankruptcy court granted). Later, after the action was filed by the committee in the federal district court, the plaintiff/committee faced a motion to dismiss for lack of standing. The issue of the creditors committee's standing was ultimately brought before the Fifth Circuit.

The Fifth Circuit first noted that the causes of action themselves were property of the estate and were enforceable by the debtor or a trustee. The court went on to hold that, "While the circumstances under which a creditors' committee may sue are not explicitly spelled out in the Code, the bankruptcy courts have generally required that the claim be colorable, that the

-17-

debtor-in-possession have refused unjustifiably to pursue the claim, and that the committee first receive leave to sue from the bankruptcy court." *Id.* at 247. The Fifth Circuit agreed that these were relevant considerations, though not necessarily "a formalistic checklist." *Id.* "This list is by no means exhaustive." *Id.* at 248 n.14. The court went on to state that when there is a colorable cause of action and the debtor-in-possession ***is unable or unwilling to fulfill its obligations—***due, for instance, to a conflict of interest—the Committee might assert the cause of action on behalf" of the estate if authorized by the bankruptcy court to do so. *Id.* at 252 (emphasis added). The Fifth Circuit further added that, in determining whether a debtor-in-possession's refusal was unjustified, "we must look to whether the interests of creditors were left unprotected as a result. [Citations omitted.] As the interests of creditors are imperilled where valid and profitable state law causes of action are neglected by the debtor-in-possession, the unjustified refusal calculus will generally amount to little more than a cost-benefit analysis." *Id.* at 253 n.20. *See also Coral Petroleum, Inc. v. Banque Paribas-London,* 797 F.2d 1351 (5th Cir. 1986) (creditors committee may be granted standing to pursue a Section 547 preference action if debtor refuses, citing Section 1109(b)); *City of Farmers Branch v. Pointer (In re Pointer),* 952 F.2d 82 (5th Cir. 1992) (in a

chapter 11 case in which a mortgagee filed an adversary proceeding seeking relief under Section 549, Fifth Circuit held that mortgagee lacked standing to bring a Section 549 action; however, court implied that an individual creditor in a chapter 11 case might bring a Section 549 action, if it moves in the bankruptcy court for permission); *Lilly v. FDIC (In re Natchez Corp.),* 953 F.2d 184 (5th Cir. 1992) (same).

Most of the circuit courts have gone the same direction as the Fifth Circuit, in permitting creditors committees, or even creditors, to pursue estate causes of action (1) when a debtor unjustifiably refuses (*see Cybergenics Corp.,* 330 F.3d at 583; *Fogel v. Zell,* 221 F.3d 955, 965 (7th Cir. 2000); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.),* 66 F.3d 1436, 1440-41 (6th Cir. 1995)), or (2) even in some circuits, where the debtor merely **consents** (*see Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC),* 423 F.3d 166, 176 (2d Cir. 2005) and *Avalanche Mar., Ltd., v. Parekh (In re Parmetex, Inc.),* 199 F.3d 1029, 1031 (9th Cir. 1999)). *See also Baltimore-Emergency Servs. II, Corp. v. Nat'l Century Fin. Enters., Inc.,* 432 F.3d 557, 562 (4th Cir. 2005) (Ultimately, here, the Fourth Circuit held that a secured creditor and creditors committee did not have derivative standing to pursue certain actions against a Chapter 11 debtor's former principal. "If derivative standing is permissible at all,

-19-

requiring a formal determination of its propriety in a given case is the only way to prevent the creditor from unjustly hijacking the bankruptcy proceedings.").

This court notes that the majority approach to granting derivative standing in Chapter 11 cases to creditors committees (and sometimes creditors)—**when a debtor-in-possession unjustifiably refuses to pursue a colorable claim**—is consistent with the way that **shareholder** derivative suits have historically been permitted to proceed in the corporate world:

> The derivative form of action permits an individual shareholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534, 90 S. Ct. 733, 736, 24 L. Ed.2d 729 (1970). Devised as a suit in equity, the purpose of derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548, 69 S. Ct. 1221, 1226, 93 L. Ed. 1528 (1949). To prevent abuse of this remedy, however, equity courts established as a precondition "for the suit" that the shareholder demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions."

*Kamen v. Kemper*, 500 U.S. 90, 95-96 (1991). *See also* Fed. R. Civ. P. 23.1, entitled "Derivative Actions" ("The complaint [in a shareholder derivative action] must ... state with particularity [the] effort by the plaintiff to obtain the desired action from

the directors or comparable authority and, if necessary, from the
shareholders or members, and . . . the reasons for not obtaining
the action or not making the effort."). *See also Spiegel v.
Buntrock*, 571 A.2d 767 (Del. 1990):

> A basic principle of the General Corporation
> Law of the State of Delaware is that
> directors, rather than shareholders, manage
> the business and affairs of the corporation.
> * * * The decision to bring a law suit or to
> refrain from litigating a claim on behalf of
> a corporation is a decision concerning the
> management of the corporation. Consequently,
> such decisions are part of the responsibility
> of the board of directors. * * *
> Nevertheless, a shareholder may file a
> derivative action to redress an alleged harm
> to the corporation. The nature of the
> derivative action is . . . [i]n essence, . .
> . a challenge to a board of directors'
> managerial power. * * * Because the
> shareholders' ability to institute an action
> on behalf of the corporation inherently
> impinges upon the directors' power to manage
> the affairs of the corporation the law
> imposes certain prerequisites on a
> stockholder's right to sue derivatively. * *
> * [The law] requires that shareholders
> seeking to assert a claim on behalf of the
> corporation must first exhaust intracorporate
> remedies by making a demand on the directors
> to obtain the action desired, or to plead
> with particularity why demand is excused.

*Id*. at 772-774 (internal citations omitted).

### b. Chapter 7

This court is of the view that derivative standing should be
viewed very differently in the Chapter 7 arena. The court notes
that a handful of cases have not treated Chapter 7 any

differently than Chapter 11, when analyzing derivative standing. *PW Enters., Inc. v. North Dakota Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892 (8th Cir. 2008) (in a Chapter 7 case in which a large unsecured creditor sought to avoid the debtor's alleged preferential or fraudulent transfers to governmental entities, the Eighth Circuit held that a creditor may sue derivatively on behalf of the estate when a trustee or debtor-in-possession consents or does not formally oppose suit; the bankruptcy court must still make a finding that the suit is in the best interest of creditors and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings); *Avalanche Maritime, Ltd. v. Parekh (In re Parametex, Inc.)*, 199 F.3d 1029 (9th Cir. 1999) (same). *But see Syndicate Exchange Corp. v. Duffy (In re Pro Greens, Inc.),* 297 B.R. 850 (Bankr. M.D. Fla. 2003) (Bankruptcy Judge Paskay contrasts Chapter 7 and Chapter 11, as it relates to derivative standing—focusing largely on Section 1123(b)(3)(B) as a basis to permit it in Chapter 11). However, there is a significant difference between Chapter 11 and Chapter 7.  The case dynamics are simply very different in Chapter 7.

In Chapter 7, unlike Chapter 11, there is always a trustee in place.  There is not the potential for a conflicted board of directors pulling its punches.  There is not the risk of the proverbial fox guarding the henhouse.  The trustee does not have

the potential for conflicts of interest that a debtor-in-possession sometimes has, since the trustee has no prepetition relationship with the debtor's management, shareholders or creditors. The trustee has a unique role as an independent fiduciary, with a completely different perspective and interest in a bankruptcy estate than either a debtor or an individual creditor. The trustee also is expected to be a gatekeeper and to exercise reasonable business judgment in deciding what actions to bring and what are not worth the expense. In theory at least (and hopefully in reality), the trustee is a fair, balanced, and experienced (not to mention bonded, *see* 11 U.S.C. § 322) official who can be depended upon to exercise good litigation judgment. Because of the unique role of a trustee, there would seem to be no equitable rationale to deviate from the Bankruptcy Code's apparent remedial scheme *vis-a-vis* avoidance actions and other estate causes of action. If creditors do not like the job the trustee is doing, they can file a motion to compel him or her to act, or a motion for removal of the trustee (11 U.S.C. § 324). In the context of such a motion, the court can scrutinize the business judgment and litigation zeal (or lack thereof) that is being exercised by the trustee. But simply allowing a creditor—a non-statutory fiduciary—to go forward in the Chapter 7 trustee's stead could facilitate a creditor "hijacking" a Chapter 7 bankruptcy case in a manner that Congress did not envision. This

-23-

court agrees with one commentator who has suggested that this could run afoul of the Bankruptcy Code's fresh start policy in the case of individual debtors.  *See K. Sharfman, Derivative Suits in Bankruptcy,* 10 STAN.J.L. BUS. & FIN. 1, 25-26 (Autumn 2004) ("While derivative suits are common in the business context, there is something very odd about bringing them on behalf of individuals.  Nonbankruptcy law recognizes the difference by allowing them in the former context but not in the latter.")  An experienced bankruptcy trustee, unlike a potentially angry and out-for-justice creditor, may have a better instinct for what is worth chasing and what is worth foregoing.  This court's concern about running afoul of the fresh start policy is heightened in this case when, oddly, Cadle acquired its claim against the Debtor well ***after*** the Debtor was granted a discharge.  *See n.5, supra.*  While this court has never heard evidence or an explanation for this odd sequence of events (and the court assumes there could be some logical explanation for Cadle acquiring a discharged claim, such as the possibility that it acquired claims in a package without full due diligence or awareness that the claim had been discharged), this court cannot help but be reminded of other troubling situations involving purchasers of discharged debt.  *See, e.g.*, Transcript of Hearing on Motions to Dismiss Adversary Proceedings Pursuant to Rule 12 (b)(6) at 18-19, *Torres v. Chase Bank USA, N.A. (In re Torres)*,

-24-

Adv. No. 06-01576 (Bankr. S.D.N.Y. Mar. 20, 2007). At a hearing
in certain adversary proceedings brought by individual debtor
plaintiffs to enforce the discharge injunction against certain
credit card issuers, Judge Robert Drain expressed concern about a
credit card company keeping discharged debts on the books as if
they were still collectible and then selling those debts to third
parties (as well as general surprise that there is an apparent
market for discharged debt). *See generally,* Robert Berner and
Brian Grow, *Prisoners of Debt*, BUSINESS WEEK, Nov. 1, 2007,
http://www.businessweek.com/bwdaily/dnflash/content/oct2007/db200
71031_039775.htm (discussing the market for discharged debt).

In any event, the court notes that the issue of derivative
standing has been the subject of considerable debate since
*Hartford* and *Cybergenics*. *See Sharfman,* 10 STAN.J.L. BUS. & FIN.
1; *A. Lepene & S. Gordon, The Case for Derivative Standing in
Chapter 11:  "It's the Plain Meaning, Stupid,"* 11 AM. BANKR. INST.
L. REV. 313 (Winter 2003). But it seems to be a generally unwise
idea, to this court, to allow a creditor to usurp the trustee's
role as a representative of the estate (including being a
gatekeeper for what actions make sense, weighing the potential
benefits of litigation).[13] If a creditor wants to fund the
trustee's pursuit of litigation, that would appear to be both

---

[13]*See Cybergenics,* 330 F.3d at 561; *Hartford*, 530 U.S. at 8.

permissible and reimbursable.[14]  *See* 11. U.S.C. §§ 364 &
503(b)(3).[15]

---

[14]The court asked Cadle's counsel if Cadle would be willing
to waive any conflict and allow him to be special counsel to the
Chapter 7 Trustee in pursuing the estate's causes of action.
Cadle was not willing to let its counsel represent the Chapter 7
Trustee.

[15]On the topic of Section 503(b)(3), the court notes that
some authority suggests that this statute is textual support for
the notion that creditors may be given derivative standing to
pursue estate actions in either Chapter 7 or 11.  Section
503(b)(3)(B) provides that "a creditor that recovers, after the
court's approval, for the benefit of the estate any property
transferred or concealed by the debtor" may be entitled to an
allowed administrative expense claim for the actual, necessary
expenses incurred by it, and Section 503(b)(4) provides a
mechanism for a possible administrative expense claim for an
attorney for such a creditor.  The *Cybergenics* court pondered
this statute and decided that, while this statute did not provide
an ***express*** statutory basis for a bankruptcy court conferring
derivative standing on a creditor to pursue avoidance actions,
the statute would be meaningless unless authority to give a
creditor derivative standing somehow otherwise existed.  *Official
Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330
F.3d 548, 567 (3d Cir. 2003)(*en banc*).  Other courts have
pondered this statute and declined to hold that Section
503(b)(3)(B) implicitly confers standing on creditors to sue on
behalf of the estate.  *E.g., Surf N Sun Apts., Inc. v. Dempsey*,
253 B.R. 490 (M.D. Fla. 1999).  This court does not believe that
Section 503(b)(3)(B) should be interpreted to explicitly or
implicitly confer standing on creditors to pursue avoidance or
other estate causes of action.  There are various plausible
explanations for Section 503(b)(3)(B) other than the situation of
derivative litigation.  *See K. Sharfman, Derivative Suits in
Bankruptcy,* 10 STAN.J.L. BUS. & FIN. 1, 7-8 (Autumn 2004).  Among
other things, a creditor might bring a direct action of his own
(for example, assume a creditor, after filing a motion to lift
stay and obtaining permission of the bankruptcy court, brings a
state conversion action for the wrongful transfer of the
creditor's collateral; assume further he recovers the collateral
and there is a surplus value for the estate; Section 503(b)(3)(B)
would appear to allow the creditor to request an administrative
expense claim for his efforts which benefitted the estate).  *Id.*
Another example is that a creditor could pursue discovery and

But in all events, this court just does not view it as good policy to usurp the trustee's role in Chapter 7.  The system works better when a statutory fiduciary is steering the ship.  As stated earlier, it is noteworthy that this holding is consistent with horn book trust law that instructs that trust beneficiaries lack standing to sue third parties on behalf of the trust.  *R. Volmer, Standing to Sue in Trust Litigation,* 19 EST. PLAN. 384 (1992).

**B.  Even if there does exist, in Chapter 7, the power to grant derivative standing to a creditor to pursue estate causes of action, such power should not be exercised in a lax manner by bankruptcy courts.  Moreover, the creditor in the case at bar has not presented a compelling case for granting it derivative standing.**

This court is ever mindful that it is a court of equity, and the grant of derivative status to a party to pursue litigation, as a representative for another, is a long standing equitable remedy with deep roots in our jurisprudence.  The equitable remedy was employed by courts when "the intended system broke down" for one reason or another.  *Cybergenics,* 330 F.3d at 568. More specifically:

> The concept of derivative standing arose
> when, despite a lack of express statutory
> authorization, courts of equity allowed
> shareholders to pursue valuable actions when
> the nominal plaintiff (the corporation)

investigations (with court permission) and ultimately recover property of the estate without even bringing any action.  This would appear to be another example for the use of Section 503(b)(3)(B).  *Id.*

unreasonably refused to do so.

*Id.* As noted in *Cybergenics*, the Supreme Court has "explained the utility of derivative standing as a means of providing equitable redress, not only from 'faithless officers and directors,' but also directly from 'third parties who had damaged or threatened the corporate properties and whom the corporation through its managers refused to pursue.'" *Id.* (citing *Ross v. Bernhard*, 396 U.S. 531, 90 S. Ct. 733 (1970)). *Cybergenics* concluded that a bankruptcy court has the ability to confer derivative standing upon a creditors committee by virtue of its equitable powers:

> The Supreme Court has long recognized that bankruptcy courts are equitable tribunals . . . . The enactment of the Code in 1978 increased the degree of regulation Congress imposed upon bankruptcy proceedings, but it did not alter bankruptcy courts' fundamental nature. See H.R. Rep. No. 95-595, at 359 (1977), reprinted in U.S.C.C.A.N. 5963, 6315 (stating that, under the Bankruptcy Code, '[t]he bankruptcy court will remain a court of equity').

*Id.* at 567. Despite occasional rumblings to the contrary (particularly after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005), this court believes that the bankruptcy courts' equitable powers are still alive and well. *See generally Marrama v. Citizens Bank,* 549 U.S. 365, 127 S. Ct. 1105 (2007).

Still, at the same time, it has long been said that a

bankruptcy court can only fashion equitable remedies to the extent consistent with the otherwise applicable statutory authority in the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S. Ct. 963, 969 (1988) ("Whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *In re Levens*, 563 F.2d 1223, 1224 (5th Cir. 1977) ("[W]hile a bankruptcy court is a court of equity, it is necessarily bound by the rules Congress has adopted to guide its deliberations."). This court believes that neither the statutes, nor the overall policies embodied throughout the Bankruptcy Code, support giving individual creditors derivative standing to pursue estate actions in a Chapter 7 case.

With that being said, even if this court does have the power to grant derivative standing to an individual creditor in a Chapter 7 case to pursue estate causes of action, the creditor who is requesting derivative status in the case at bar has not presented a compelling case that warrants conferring upon it derivative standing.

As described earlier herein, the Trustee had heretofore presented a settlement of the entire adversary proceeding that she thought was fair and equitable and in the best interests of the estate.  The settlement involved the Debtor keeping his discharge intact, and the Debtor paying to the estate an amount

-29-

equal to much of the Nonexempt Sale Proceeds. Cadle was not fond
of this settlement. Cadle wanted to go forward with its Section
727(d) action. The district court agreed that Cadle should be
permitted to proceed with its Section 727(d) action. But now
Cadle wants standing to pursue the Trustee's causes of action,
too. Cadle had other options here. As earlier noted, it could
have asked approval to fund the Trustee's pursuit of the estate's
causes of action. 11 U.S.C. §§ 364 & 503(b). Or perhaps Cadle's
counsel might have offered to be special counsel to the Trustee
in the adversary proceeding on a contingency basis. 11 U.S.C. §
327. But Cadle, for whatever reason, prefers to have standing
and to control the estate's causes of action.

In evaluating Cadle's request, the court turns to the Fifth
Circuit's holding in *Louisiana World*—assuming it would be the
controlling standard in the Chapter 7 context. The Fifth Circuit
there, as earlier stated, indicated that relevant considerations
were whether the debtor-in-possession (here, Trustee) had a
"colorable claim" and, yet, was "unable or unwilling to fulfill
its obligations"—the classic example being because of a conflict
of interest. *Louisiana World Exposition, Inc. v. Federal Ins.
Co. (In re Louisiana World Exposition, Inc.)*, 858 F.2d 233, 252
(5th Cir. 1987). Here, the Trustee has no conflict of interest.
Moreover, the Trustee is not "unable or unwilling to fulfill
[her] obligations." The Trustee merely thought that a compromise

of the adversary proceeding was fair and equitable, and made more
sense than litigating. Cadle disagreed, but this court agreed
with the Trustee. The district court affirmed the bankruptcy
court's order as to the bona fides of the settlement, as to the
Trustee's causes of action; the district court simply ruled that
Cadle could not be forced to dismiss *its* Section 727(d) claims.
Now the Debtor will not consummate the settlement with the
Trustee because, apparently, his interpretation of the settlement
was that it was conditional on Cadle's Section 727(d) action
being dismissed, too. Thus, the Trustee's settlement cannot now
be effectuated. The Trustee has no significant funds to continue
this now long and expensive fight, nor the motivation, since she
does not believe it would result in value for creditors at the
end of the day (after payment of administrative expense claims
associated with the fight). The Trustee has shown good business
judgment, in this court's estimation. She has seen no need to
"churn a file," simply for the benefit of lawyers at the end of
the day. And, it appeared to the court, the Trustee was not so
concerned that the Debtor's postpetition actions were an affront
to the integrity of the bankruptcy system, that she believed that
her Section 727(d) action must be pursued as a matter of
principle. Under all of these circumstances, this court does not
find compelling cause to grant standing to Cadle—if this court
even has the power to do so in a Chapter 7 context. Again, the

Trustee is not conflicted and is not unwilling and unable to pursue the adversary proceeding.  She simply believes, in her business judgment, that the settlement was and is in the best interests of the estate.

So how to resolve this stalemate?  If Cadle wants to fund the Trustee's fees to pursue the estate's causes of action in the adversary proceeding, the court will consider that.  11 U.S.C. §§ 364 & 503.  If the Trustee desires to employ as special counsel Cadle's counsel (on a contingency basis) to pursue the estate's causes of action in the adversary proceeding, the court will consider that.  11 U.S.C. § 327.  If either of these type motions are filed, the court will want to hear, as part of the evidence, an explanation of why Cadle purchased its claims against the Debtor post-discharge.  But, in all events, the court will ***not*** allow Cadle to usurp the role of the Trustee in this case and pursue estate causes of action.  Cadle may, obviously, proceed with its independent Section 727(d) cause of action, but nothing more.

## IV.

### CONCLUSION

For all of the foregoing reasons, the Standing Motion [doc. no. 46] of Cadle is **DENIED**.

**IT IS SO ORDERED.**

###END OF MEMORANDUM OPINION AND ORDER###